JOSÉ, CARMEN, MARÍA MAGDALENA, ANTONIA, FRANCISCA, LUISA
y GUILLERMO RUBERT ARMSTRONG, y ANTONIA ARMSTRONG
VDA. DE RUBERT, demandantes y apelados, *v.* RAFAEL
SANCHO BONET, en su carácter de TESORERO DE PUERTO
RICO, demandado y apelante.

Núm. 8144.—*Sometido:* Febrero 25, 1941. *Resuelto:* Marzo 10, 1941.

*Hon. Procurador General George A. Malcolm* y *R. García Cintrón, Subprocurador Auxiliar,* abogados del apelante; *Henry G. Molina,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Se trata de una apelación de la sentencia dictada por la Corte de Distrito de San Juan declarando con lugar una demanda sobre cobro de contribuciones pagadas bajo protesta. Los hechos alegados en la demanda fueron admitidos por el demandado, siendo el caso sometido a la corte inferior, por estipulación de las partes, para ser resuelto por las cuestiones de derecho planteadas. Los hechos del caso son los siguientes:

La Asamblea Municipal de Río Piedras aprobó, en febrero 23 de 1937, una ordenanza imponiendo una contribución adicional de cincuenta centésimas (50/100) del uno por ciento sobre toda propiedad, mueble e inmueble, situada dentro de los límites territoriales del Municipio de Río Piedras durante el año económico de 1937–38. La ordenanza fué aprobada por el alcalde el día 24 de febrero de 1937; publicada en el

periódico *"El País"* durante la semana comprendida del 25 de febrero al 3 de marzo, sometida al Consejo Ejecutivo el día 5 de marzo y aprobada por dicho cuerpo en marzo 23 de 1937. Los demandantes apelados, como dueños de dos propiedades en el Municipio de Río Piedras, pagaron en mayo 27 de 1938 contribuciones por la suma de $2,503.82, de la cual $556.42, importe de la contribución adicional objeto de la ordenanza, fué pagada bajo protesta, alegándose que dicha contribución adicional fué indebidamente cobrada porque la referida ordenanza era nula por haberse aprobado en violación a los preceptos del artículo 46 de la Ley Municipal vigente (Núm. 53 de 1928, pág. 335). Los dos motivos de nulidad sometidos a la corte inferior (los otros alegados en la demanda enmendada los demandantes desistieron de ellos), fueron los siguientes:

A.—Que la ordenanza no estaba en poder del Tesorero de Puerto Rico, debidamente aprobada por el Consejo Ejecutivo, en o antes del día 15 de marzo de 1937, según dispone el Art. 46, supra.

B.—Que la ordenanza disponía que el fondo especial creado por su sección segunda podría ser aplicado a fines distintos de los autorizados en el inciso c-2 de dicho artículo 46.

El demandado apelante imputa a la corte inferior la comisión de cinco errores, a saber:

*"Primero.*—Resolver que las contribuciones pagadas bajo protesta en este caso podían ser cobradas bajo la Ley núm. 8 de 1927, sobre recobro de contribuciones pagadas bajo protesta.

*"Segundo.*—Resolver que no existía la obligación de incluir como demandado al Municipio de Río Piedras.

*"Tercero.*—Resolver que era fatal el que no estuviera la ordenanza en poder del Tesorero de Puerto Rico en o antes del 15 de marzo de 1937.

*"Cuarto.*—Resolver que la ordenanza destinaba la contribución especial a fines no autorizados por el artículo 46 de la Ley Municipal.

*"Quinto.*—Declarar con lugar la demanda, condenando al demandado a devolver a los demandantes la suma pagada bajo protesta y sus intereses legales y a pagar las costas en el pleito.''

Los dos primeros errores se refieren al hecho de haber la corte inferior declarado sin lugar las excepciones previas interpuestas a la demanda original, y reproducidas en la contestación a la demanda enmendada, de falta de hechos constitutivos de causa de acción y de defecto de parte demandada por no haberse incluído como demandado al Municipio de Río Piedras.

Sostiene el apelante que no hay en Puerto Rico ley que autorice la devolución de dinero pagado por concepto de la contribución adicional impuesta por el Municipio de Río Piedras, ya que la Ley núm. 8 "disponiendo el pago de contribuciones bajo protesta y estableciendo un procedimiento para autorizar el cobro y devolución de las mismas", aprobada el 19 de abril de 1927 (Leyes de 1927, pág. 487), no incluye dicha contribución adicional, la cual el apelante equipara a los "special assessments" del derecho americano para diferenciarla de las contribuciones generales. Veamos si tiene razón el apelante.

La sección 1 de la Ley núm. 8 de 1927, supra, dice así:

"Sección 1.—Cuando algún contribuyente creyere que no debe pagar *cualquier contribución o parte de ella,* estará no obstante obligado a pagarla en su totalidad, a requerimiento del colector de rentas internas de su distrito, o del funcionario encargado de la recaudación, y si desea establecer alguna reclamación, al efectuar el pago, pedirá a dicho colector, o funcionario recaudador, que consigne su protesta al dorso del recibo indicando específicamente si ésta se refiere al todo o parte de la contribución que ha sido pagada bajo protesta, y precisando el montante de lo impugnado. Dicha nota será firmada por el contribuyente y por el colector o funcionario encargado de la recaudación." (Itálicas nuestras.)

Y la sección 3 dispone, en parte, que:

"Sección 3.—El contribuyente que haya pagado el todo o parte de *cualquier contribución* bajo protesta, podrá, dentro del plazo de un año, a partir de la fecha del pago, *demandar al Tesorero de Puerto Rico en una corte insular de jurisdicción competente,* o en la corte de distrito de los Estados Unidos para Puerto Rico, para obtener la devolución de la cantidad protestada. El Procurador General

representará al Tesorero de Puerto Rico en tales pleitos. Una vez radicada la demanda, si se radicase en una corte insular, se tramitará de acuerdo con los procedimientos, términos y demás requisitos establecidos por el Código de Enjuiciamiento Civil, para una acción ordinaria...." (Itálicas nuestras.)

Como vemos, la ley en su sección primera autoriza al contribuyente a pagar bajo protesta "cualquier contribución o parte de ella", y en la tercera, a "demandar al Tesorero de Puerto Rico en una corte insular de jurisdicción competente."

Ahora bien, la contribución impugnada se impuso por el Municipio de Río Piedras de acuerdo con el inciso (c) de la sección 46 de la Ley Municipal de 1928 (Leyes de 1928, pág. 335, 375), que dispone, en parte, lo siguiente:

"Artículo 46.—Los ingresos municipales consistirán:

"(a) .      .      .      .      .      .      .

"(b) .      .      .      .      .      .      .

"(c) *En cualquier recargo de la contribución sobre la propiedad imponible del municipio,* siempre que así se acordare, por lo menos, por las dos terceras partes del número total de miembros de que se componga la Asamblea Municipal. Las ordenanzas imponiendo estos recargos requerirán la aprobación del Consejo Ejecutivo, previo informe del Tesorero de Puerto Rico. Dicho recargo no podrá exceder del uno por ciento sobre la valoración de la propiedad, computándose cualquier contribución adicional sobre dicha valoración, para fines municipales autorizada al presente, o que en lo futuro se autorizare. Dichas ordenanzas deberán ser expuestas al público por un término no menor de veinte días y publicadas dos veces en una semana en un periódico de Puerto Rico de gran circulación antes de ser sometidas al Consejo Ejecutivo. Tal recargo o contribución adicional sobre la valoración de la propiedad, solamente podrá destinarse a los fines siguientes:

"(1) .      .      .      .      .      .      .

"(2) *Fomento* de la instrucción pública, *construcción* de caminos, acueductos, alcantarillados, hospitales, incluyendo su equipo y sostenimiento, cementerios, asilos de caridad, sanatorios, manicomios, reformatorios, plazas de mercado, mataderos, carnicerías, muelles y malecones, casas-escuelas y para maestros, granjas agrícolas, casas para ser vendidas a obreros a largos plazos, diques para evitar inundaciones, lavaderos públicos, edificios para oficinas municipales, *cons-*

*trucción, pavimentación, asfaltado* y *arbolado* de calles y parques, plazas, *construcción* de carreteras y caminos vecinales, *fundación* de aldeas y *construcción* o *instalación* de plantas eléctricas, y para la compra de terrenos para la realización de las obras aquí enumeradas. *Dicho recargo o contribución adicional sobre la valoración de la propiedad se recaudará por el Tesorero de Puerto Rico,* sirviendo de autoridad al efecto, una copia certificada de la ordenanza que adoptare la Asamblea Municipal, aprobada en la forma dispuesta en el inciso (*c*) de este artículo, y se impondrán tomando como base la tasación hecha por el Departamento de Hacienda.

*Dicho recargo o contribución adicional sobre la valoración de la propiedad* cuando haya de aplicarse a los fines especificados en el apartado (2) de este artículo, podrá imponerse solamente para regir durante el año económico siguiente a aquél en que se aprobare la ordenanza correspondiente; pero cuando haya de aplicarse al pago de empréstitos con sus intereses—apartado (1) de este artículo—podrá imponerse para los años que sean necesarios hasta la total redención de dicho empréstito e intereses. En ningún caso este recargo o contribución adicional sobre la valoración de la propiedad podrá cobrarse en el mismo año económico en que fuere votado por la Asamblea Municipal y aprobado por el Consejo Ejecutivo. La ordenanza de la Asamblea Municipal imponiendo cualquier contribución adicional, incluyendo la conocida por 'school tax,' sobre la valoración de la propiedad, *deberá estar en poder del Tesorero de Puerto Rico debidamente aprobada por el Consejo Ejecutivo, el día quince o antes del mes de marzo.....*" (Itálicas nuestras.)

El estatuto habla de "recargo de la contribución sobre la propiedad imponible," de "recargo o contribución adicional sobre la valoración de propiedad," usándose en el texto inglés la frase "surcharge or additional tax on the assessed value of property." No se autoriza a los municipios a imponer una contribución especial "special assessment" contra determinada propiedad, sino un aumento o recargo sobre la contribución general ya impuesta a la propiedad.

■ Además, veamos la definición de un "special assessment" o "tasación especial," para determinar su alcance. En 44 C. J. 481, Sec. 2806, se definen así:

"Tasas especiales (special assessments) son cargas especiales impuestas por ley *sobre predios de terrenos* para sufragar los gastos,

en todo o en parte, de una mejora local hecha por el municipio, bajo la teoría de que el dueño de la propiedad ha recibido beneficios especiales por la mejora en exceso de los beneficios recibidos por el público en general.''

Y, a la página 483, se dice:

''Estas tasas locales pueden imponerse a los predios de terreno únicamente y no a la propiedad personal.''

En 26 R. C. L. 40, Sec. 24, se expone la doctrina aplicable a las ''tasas especiales'' así:

''En algunos casos, sin embargo, una mejora pública determinada, aunque aumenta la conveniencia del público en general, es tan ventajosa a un territorio que no coincide con una de las subdivisiones políticas del estado, que se ha creído más justo tasar el costo de la mejora sobre el área beneficiada que incluirla en la tasación general impuesta a toda la comunidad. Por ejemplo, el costo de un puente es algunas veces impuesto a ciertos condados o pueblos, y en otros casos se crean cuasi-corporaciones llamadas distritos para sufragar los gastos de las escuelas, para suminitrar agua o para la extinción de fuegos en el territorio comprendido en el distrito... Un paso más nos lleva al verdadero ''special assessment'' o contribución de mejoramiento (betterment tax) como algunas veces se le llama, a virtud de la cual el todo o parte del costo de una mejora determinada se impone al territorio beneficiado en proporción al beneficio recibido *por cada parcela* de terreno dentro de dicho territorio.'' (Itálicas nuestras.)

En el caso de *Chicago M. & St. Ry. Co.* v. *Phillips,* 82 N. W. 787, se resolvió que la tasación de toda propiedad de un ferrocarril para pagar la construcción de una alcantarilla era nula por ser una contribución sobre propiedad mueble de la compañía pues sólo la propiedad inmueble podía ser tasada para dicho fin. Véase además el caso de *Illinois Central Railroad* v. *Decatur,* 147 U. S. 190, 37 L. ed. 132, y 1 Cooley *on Taxation* 142, sec. 51, (Fourth ed.).

En el caso de *Anaheim Sugar Co.* v. *Orange County,* 181 Cal. 212, 216, 183 P. 809, 811, se dijo:

''Cuando la carga se impone sobre toda la propiedad real y personal en el distrito, de acuerdo con su valoración y no a base de un

beneficio especial, es claro que la Legislatura consideró dicha carga como una contribución general y no como un 'special assessment.' Esto es así, aunque la contribución se imponga con el fin de construir una mejora pública que pueda conferir mayores beneficios a una clase de personas o propiedad que a otras.''

Esta misma doctrina fué ratificada en el caso de *American Co.* v. *City of Lakeport,* 32 P. (2d) 622, 627 en el que se resolvió que ''cuando la contribución se impone a toda la propiedad (municipal) sin tomar en consideración los beneficios recibidos, es una contribución y no un 'special assessment.' ''

La ordenanza aprobada por el Municipio de Río Piedras no impone una ''tasa especial'' a ciertas propiedades del municipio que pueden ser beneficiadas más que otras por las obras a realizarse con el producto de la contribución adicional que por ella se impone. Lo que hace es imponerla a toda la propiedad real y personal sujeta al pago de contribuciones dentro de los límites territoriales del municipio. Es un recargo a la contribución ya impuesta (según lo autoriza el Artículo 46 de la Ley Municipal, supra) y no una contribución especial dentro del significado que los ''special assessments'' tienen en el derecho americano, ya que no sólo es de carácter general, en cuanto a la propiedad real, sino que incluye la propiedad personal o mueble, y ya hemos visto que dichas contribuciones especiales no se imponen a la propiedad personal.

En el caso de *Yabucoa Sugar Co.* v. *Municipio de Yabucoa,* 33 D.P.R. 360, 362, esta corte expresó su opinión, parcialmente, en la forma siguiente:

''Nos inclinamos al parecer de que la corte inferior estuvo correcta al expresar que si la recaudación de la contribución impuesta ha de hacerse *por el Tesorero de Puerto Rico, la demandante tiene el remedio de verificar el pago bajo protesta y establecer la acción que corresponda para exigir su devolución, si ella es ilegal, excesiva o errónea.* Ley núm. 17 de 13 de mayo de 1920, (pág. 125).'' (Itálicas nuestras.)

Creemos llegado el momento de resolver que, no siendo los remedios especiales concedidos por la Ley Municipal en su artículo 83, para anular o revisar, mediante *certiorari*, cualquier acto legislativo o administrativo, o para suspender mediante *injunction* las actuaciones de los funcionarios municipales, de carácter exclusivo, y que, habiéndose recaudado la contribución impuesta por el Tesorero de Puerto Rico, la demandante pudo pagar bajo protesta y entablar esta acción bajo la Ley núm. 8 de 1927, supra, y, como consecuencia no había que incluir al Municipio de Río Piedras como parte demandada.

No cometió error la corte inferior al declarar sin lugar las excepciones previas, y, por tanto, se desestiman los dos primeros errores alegados por el apelante.

El tercer error se refiere al hecho de haber resuelto la corte inferior que es mandatoria la disposición de la Ley Municipal de que la ordenanza estuviera en poder del Tesorero de Puerto Rico en o antes del día 15 de marzo de 1937 y que, habiéndose admitido por el demandado que la ordenanza fué aprobada por el Consejo Ejecutivo el día 23 de marzo de dicho año y luego enviada al Tesorero, no se cumplió con los términos de la ley.

Es en relación con las leyes contributivas que más a menudo se ha levantado la cuestión de si determinadas palabras y términos usados en ellas deben considerarse como mandatorias o meramente directivas. La doctrina general, sin embargo, es al efecto de que cuando los requisitos exigidos por el estatuto son con el fin de regular la conducta de los funcionarios públicos sin que se afecte los derechos del contribuyente, las palabras usadas son directivas y no mandatorias. La regla general fué expuesta por el Tribunal Supremo de los Estados Unidos en el caso de *French* v. *Edwards,* 80 U. S. 506, 511, 20 L. ed. 702 en estas palabras:

"Hay indudablemente muchos requisitos estatutarios con el fin de guiar a los funcionarios en los deberes que se les impone, que no limitan sus poderes ni hacen inefectivo su ejercicio al no cumplirlos.

Tales son generalmente aquellos requisitos cuyo fin es obtener el orden, sistema y ligereza en los procedimientos y que al no cumplirse, los derechos de las partes interesadas no pueden ser afectados en su perjuicio. Disposiciones de esta clase no son consideradas como mandatorias, a menos que vayan acompañadas de palabras negativas al efecto de que el acto requerido no se hará en ninguna otra forma o tiempo que el designado.''

En 2 Cooley *on Taxation* 1143, sec. 512, se dice:

''Así en general el fijar una fecha exacta para realizar un acto es solamente directivo cuando no se fija con el fin de dar a la parte una audiencia o para cualquier otro fin importante para él.''

Y así se resolvió en el caso de *Walker* v. *Edmonds,* 197 Pa. 645, 47 A. 867 que:

''Cuando deba tomarse acción dentro de cierto tiempo, el mero hecho de que el funcionario o la junta no actuaran dentro del término no es fatal, pues el requisito puede considerarse directivo.''

La disposición de nuestra Ley Municipal de que las ordenanzas municipales imponiendo un recargo a la contribución general deben estar en poder del Tesorero de Puerto Rico antes del 15 de marzo es con el fin de que dicho funcionario pueda con tiempo prepararse, antes del próximo año fiscal que comienza el primero de julio, para cobrar dichas contribuciones. En nada afecta a los derechos sustanciales del contribuyente el que la ordenanza llegue a poder del Tesorero de Puerto Rico antes o después del día 15 de marzo, y el hecho de que en el caso que resolvemos llegara después de dicha fecha no afecta la validez de la ordenanza como resolvió la corte inferior. El tercer error imputado fué cometido pero no conlleva la revocación de la sentencia dictada, como veremos al resolver el cuarto error.

Se refiere éste al hecho de haber resuelto la corte inferior que la ordenanza era nula por destinarse las contribuciones impuestas a fines no autorizados por el artículo 46 de la Ley Municipal.

Dicho artículo, en su inciso (*c*), supra, especifica que los ingresos municipales consistirán, entre otros, en cualquier

recargo de la contribución imponible del municipio, el que sólo podrá destinarse a los fines que específicamente señala, entre otros, la *construcción* de caminos, acueductos, alcantarillados, plazas de mercado, edificios para oficinas municipales, cementerios, etc.

La sección segunda de la ordenanza dispone que el producto de la contribución ingresará en un fondo especial para ser aplicado a los siguientes fines:

"....construcción y *reparación* de edificios municipales, incluyendo casas escuelas, *reparación* y conservación de calles, aceras y caminos, ampliación y *reparación* del sistema de alcantarillado, compra de equipo y sostenimiento de Hospital Municipal; *ensanche* del cementerio; *mejoras* en la plaza del mercado y matadero, compra de equipo para el parque de bombas; *obras públicas en general cuyo costo no pueda incluirse en el presupuesto de fondos ordinarios.*" (Itálicas nuestras.)

La corte inferior resolvió que el Municipio de Río Piedras no estaba autorizado para imponer la contribución adicional para ser destinada a reparaciones de clase alguna, ensanche del cementerio, mejoras de clase alguna, compra del equipo para el parque de bombas, ni obras públicas en general, y sí para las construcciones que en el inciso (*c*) se especifican.

No hay doctrina más firmemente establecida por las autoridades y la jurisprudencia que la que sostiene que las corporaciones municipales sólo pueden ejercer aquellos poderes o facultades que les han sido expresamente conferidos por la Legislatura. Especialmente es esto así en relación con la concesión del poder para imponer contribuciones y la interpretación del estatuto concediendo dicho poder debe ser estricta, pues al ciudadano no puede imponérsele una carga contributiva que no esté expresamente autorizada por la ley. Esta doctrina es aplicable, no sólo a las corporaciones municipales sino al gobierno en general. En el caso de *Gould* v. *Gould*, 245 U. S. 151, la doctrina se expresa en estas palabras:

"En la interpretación de estatutos imponiendo contribuciones la regla establecida es no extender sus disposiciones, por implicación,

más allá de lo que dice el lenguaje usado, o aumentar sus términos *para abarcar materias no específicamente mencionadas.* En caso de duda *deben interpretarse lo más estrictamente en contra del Gobierno y a favor del ciudadano."* (Itálicas nuestras.)

Véase, además, *Best* v. *City of Birmingham,* 78 So. 100; *Rodenbough* v. *U. S.,* 25 F. (2d) 13; 6 McQuillin *Municipal Corporations* 334.

En 61 C. J. 571 se dice:

"Cuando el estatuto provee o designa separadamente los distintos fines para los cuales se puede imponer la contribución....*dicho requisito es mandatorio."* (Itálicas nuestras.)

Por último, en el caso de *City of De Land* v. *Florida, Pub. Serv. Co.,* 161 So. 735, se resolvió que una ordenanza imponiendo contribuciones debe considerarse en su totalidad para determinar su validez, y si, cuando así se considera, es irrazonable e inválida, la corte puede declararla nula en su totalidad *sin tener que ponerse a entresacar las partes inválidas y 'enforzar' el resto.*

Examinada la ordenanza objeto de este litigio a la luz de las anteriores doctrinas, sólo podemos llegar a una conclusión y es que la Asamblea Municipal de Río Piedras se excedió en la facultad y poder que le confirió la Legislatura. No se limitó por la ordenanza a especificar que la contribución se dedicaría a algunos de los fines autorizados por la Ley Municipal, sino que los amplió, y donde el estatuto autoriza la construcción de determinadas obras ella agregó "reparación" en unos casos y en otros "ampliación" y "mejoras". Dispuso, además, para la compra de equipo para el parque de bombas, que no está incluído en el inciso (*c*) del artículo 46, supra, y, por último, incluyó la frase genérica "obras públicas en general cuyo costo no pueda incluirse en el presupuesto de fondos ordinarios."

Con esta última frase como autoridad podría el Municipio de Río Piedras dedicar los fondos recaudados a cualquier fin que considerara una "obra pública" sin ajustarse a ninguna

de las obras específicamente mencionadas en la ley. Estamos convencidos, por el contexto del estatuto municipal, de que no fué la intención de la Legislatura delegar poderes generales a los municipios para imponer recargos de las contribuciones sino que los limitó a los específicamente enumerados en el inciso (*c*) del artículo 46, supra. Es de aplicación, por tanto, la máxima *"expressio unius est exclussio alterius."*

*Somos de opinión que, especialmente, por la frase genérica antes mencionada, la ordenanza es nula, y que la corte inferior no cometió el cuarto error, y, como consecuencia tampoco el quinto, y procede, por tanto, desestimar el recurso y confirmarse la sentencia apelada.*