FELIPE SEGARRA SERRA y EDUARDO G. GONZÁLEZ, peticionarios, *v.* SANTIAGO IGLESIAS, JR., RAFAEL PICÓ y CARLOS M. PASSALACQUA, como miembros de la Junta de Planificación, Urbanización y Zonificación de Puerto Rico, recurridos.

Núm. 14.  *Sometido:* Enero 16, 1950.  *Resuelto:* Marzo 31, 1950.

*Brown, Newsom & Córdova,* abogados de los peticionarios; *Hon. Procurador General Vicente Géigel Polanco* y *Rafael R. Fuertes, Félix Bello* y *A. Sandín del Manzano,* abogados éstos de la Junta de Planificación, abogados todos de los recurridos.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Felipe Segarra Serra y Eduardo G. González radicaron ante la Junta de Planificación una solicitud para lotificar 62.37 cuerdas de terreno en Santurce. Esta Declaración de Intención de Lotificar fué aprobada por la Junta en julio 16, 1947 como el desarrollo preliminar de la Urbanización Santa Teresita, bajo la condición de que los Planos de Construcción deberían especificar que determinada área se reservaría para ser adquirida por El Pueblo de Puerto Rico para la construcción de una escuela y un parque.

En abril 28, 1948 la Junta aprobó los Planos de Construcción sometidos por Segarra y González, los cuales reservaban el área en cuestión para un parque y una escuela intermedia. En junio 23, 1948 la Junta aprobó un plano de inscripción parcial de ciertos solares en la Urbanización, sometido por Segarra y González, en el cual se reservaba la misma área para escuela y parque.

Sin embargo, en agosto 16, 1948 Segarra y González radicaron una petición ante la Junta, solicitando (1) que dejara sin efecto sus resoluciones de julio 16, 1947 y junio 23, 1948, con las cuales, según se ha visto, los peticionarios estuvieron conformes, en tanto en cuanto se reservaban aproximadamente 20 cuerdas de terreno para ser adquiridas por

El Pueblo de Puerto Rico para la construcción de una escuela y parque, y (2) la aprobación de la lotificación de dichas 20 cuerdas para integrarlas a la Urbanización Santa Teresita. En su petición alegaban que no habían objetado previamente la reservación de esta área para uso público bajo la creencia de que el gobierno procedería a expropiar estos terrenos dentro de un término de tiempo razonable; que había transcurrido más de un año sin que el gobierno tomara acción alguna; y que por lo tanto estaban siendo privados de su propiedad sin el debido procedimiento de ley, particularmente su derecho a lotificar este terreno para integrarlo a la Urbanización Santa Teresita.

En septiembre 22, 1948 la Junta denegó esta solicitud. En octubre 2, 1948 los peticionarios solicitaron la reconsideración. En diciembre 22, 1948 la Junta la declaró sin lugar. En adición a las razones expuestas en su resolución de septiembre 22, 1948, la Junta declaró sin lugar la moción de reconsideración porque 15.4683 cuerdas de dicha finca habían sido expropiadas para la construcción de un parque, tornándose el caso en académico en cuanto a dicha porción de terreno. Entonces los peticionarios radicaron una moción solicitando se dejara sin efecto la resolución denegando la reconsideración porque las 2.1737 cuerdas de dicho terreno, que fueron separadas para una escuela, no habían sido expropiadas todavía. Antes de que dicha moción fuera considerada por la Junta, González y Segarra radicaron una petición de revisión ante este Tribunal.

■■ Pasaremos primero sobre la cuestión de si tenemos jurisdicción para revisar la resolución de la Junta de septiembre 22, 1948 y la de diciembre 22, 1948, denegando la reconsideración de la primera, de acuerdo con el artículo 26 de la Ley núm. 213, Leyes de Puerto Rico, 1942 ((1) pág. 1107), según ha sido enmendada por la Ley núm. 429, Leyes de Puerto Rico, 1946 ((1) pág. 1219).

La Junta alega que el artículo 26 no es aplicable ya que los peticionarios en efecto están tratando de obtener un cam-

bio en el mapa de zonificación de San Juan, el cual solamente puede ser enmendado siguiendo el procedimiento señalado en el artículo 17 del Reglamento de Planificación núm. 4. Dicho artículo provee que el mapa de zonificación puede ser enmendado (1) a iniciativa de la Junta, (2) a solicitud de la Asamblea Municipal afectada, y (3) a solicitud de por lo menos el 50 por ciento de los dueños afectados, pero no menos de 20 en número. El artículo 17 también provee que una vista pública deberá celebrarse antes de que sea enmendado el mapa de zonificación.

El procedimiento del artículo 17 obviamente contempla modificaciones en interés público. No da a los peticionarios un derecho privado e individual. Esto fué provisto por la Legislatura en el artículo 26 de la Ley núm. 213, según ha sido enmendada, y se aplica aquí. Por lo tanto rechazamos el argumento de la Junta de que debemos desestimar la petición por falta de jurisdicción.

▆▆▆ El único señalamiento hecho por los peticionarios en cuanto a los méritos es que la acción de la Junta al negar permiso para lotificar las 2.1737 cuerdas de terreno por el fundamento de que habían sido separadas para el uso público como escuela, los priva de su propiedad sin el debido procedimiento de ley en violación del artículo 2 de la Ley Orgánica.

Suponemos, sin resolverlo, que terrenos que han sido reservados para uso público, tienen que ser adquiridos por el gobierno, por compra o expropiación, dentro de un término razonable. Cf. *Zayas* v. *Junta de Planificación*, 69 D.P.R. 30, 37, *et seq*. El récord demuestra que cuando el peticionario sometió su proposición original para esta urbanización, surgieron numerosos problemas; que los mismos fueron resueltos a satisfacción tanto de los intereses privados como de los públicos; y que entonces se hizo un arreglo, que fué satisfactorio para el peticionario, el cual fué incorporado en las resoluciones de la Junta de julio 16, 1947 y junio 23,

1948. Este arreglo contenía una disposición específica de que los terrenos ahora en controversia serían reservados para una escuela y un parque. Convenimos con los peticionarios en que en este arregló había una disposición implícita de que el gobierno adquiriría el terreno dentro de un término razonable. Pero bajo todas las circunstancias de este caso no podemos convenir que el tiempo transcurrido fuera irrazonable cuando los peticionarios solicitaron de la Junta, en agosto 16, 1948, que dejara sin efecto sus resoluciones de julio 16, 1947 y junio 23, 1948. Esto es especialmente cierto en vista del hecho de que prácticamente todo el terreno había sido expropiado para la fecha en que la Junta consideró la moción de reconsideración y que la urbanización se estaba llevando a cabo gradualmente en distintas etapas durante ese tiempo.

*Las resoluciones de la Junta de septiembre 22, 1948 y diciembre 22, 1948 serán confirmadas.*