WAYMOUTH CORPORATION, peticionaria, *v.* JUNTA DE PLANIFICACIÓN DE PUERTO RICO, recurrida.

Número 35.

*Sometido:* 18 de enero de 1958. *Resuelto:* 23 de julio de 1958.

620

*Córdova & González* y *Robert E. Schneider, Jr.*, abogados de la peticionaria; *Rafael R. Fuertes* y *A. Sandín del Manzano*, abogados de la recurrida.

El Juez Asociado Señor Belaval emitió la opinión del Tribunal.

La Waymouth Corporation radicó ante la Junta de Planificación de Puerto Rico una declaración de su intención de lotificar un solar de su propiedad, situado en el barrio·de Santurce de la ciudad de San Juan. La Junta desaprobó la lotificación solicitada por los siguientes fundamentos: "los referidos solares objeto de segregación en este caso radican contiguos a la laguna del Condado y además de carecer de facilidades de aceras y acometidas, serán casi totalmente ocupados por el derecho de vía de la Avenida Norte en proyecto, según mapa oficial para la Sección 5–16 aprobado el 12 de enero de 1951, conforme al Plano Regulador de Vías Principales para el Area Metropolitana de San Juan, Puerto Rico 2-A".

Solicitó la peticionaria reconsideración de dicho acuerdo y en su solicitud informó estar dispuesta a prestar cualquiera fianza que la Junta de Planificación decidiera fijar para la

construcción de las aceras y acometidas y en la vista además probó que solamente uno de los solares a formarse sería afectado por el trazado de la Avenida Norte, y que según el plano preparado por el propio Departamento de Obras Públicas, el único solar afectado por la Avenida Norte quedaría reducido en unos 166 metros cuadrados, pero aún después de la reducción, tendría una cabida de 608.21 metros cuadrados.

La Junta de Planificación declaró sin lugar la reconsideración solicitada por los siguientes fundamentos: (1) que los terrenos a lotificarse quedan afectados por el derecho de vía de la Avenida Norte de acuerdo con el Mapa Oficial para la misma en su Sección 5–16, adoptado y aprobado de acuerdo con las disposiciones de la Ley 213 de 1942, según enmendada, luego de celebrarse sendas vistas públicas; (2) que gran parte de dichos terrenos están marcados como "P" (para uso público) de acuerdo con el Mapa de Zonificación, adoptado y aprobado también después de celebrarse varias vistas públicas; (3) que los propuestos solares carecerían de facilidades de aceras y acometidas; (4) que existe una controversia sobre los terrenos en cuestión entre la peticionaria y el Estado Libre Asociado de Puerto Rico, ya que parte de los mismos que quedan afectados por el Mapa de Zonificación se reputan como ganados al mar y dicha controversia es una a resolverse por los tribunales estatales de justicia; (5) que la actuación de la Junta en este caso constituye un sano uso de la discreción que le confieren tanto la Ley núm. 213 de 1942 como los reglamentos aplicables al presente caso.

██ Si los terrenos a lotificarse quedan afectados por el trazado de la Avenida Norte, es una simple cuestión de hecho. Notamos que en la resolución de la Junta no se determina en qué forma y hasta qué extremo dichos terrenos quedan afectados, y cómo esto imposibilitaría la lotificación solicitada. Por el contrario, lo que la peticionaria alega ahora ante nos, es que examinado el trazado de la Avenida, el mismo no afectaría sustancialmente la lotificación de los dos solares que interesa la peticionaria. Para dicha afirmación se basa en

el propio plano de construcción oficial de dicha Avenida.
Nada encontramos en el legajo que nos permita determinar
si esta conclusión está realmente sostenida por la prueba que
tuvo ante sí la Junta.    Siendo esta la situación, creemos que
lo mas aconsejable, es devolver el caso a la Junta para que
proceda a determinar, con vista a la prueba, si el trazado de
la Avenida Norte impide en absoluto la lotificación del rema-
nente de los terrenos.

■■ El hecho de que gran parte de estos terrenos estén
separados para uso público, no significa que el derecho de
propiedad sobre los mismos esté totalmente suspendido.    La
propia Junta ante nos admite que la separación de determi-
nado terreno para uso público no implica una congelación
del derecho de propiedad.    Si esto es así, en un caso como éste,
la Junta debe determinar si por el transcurso del tiempo o
por la improbabilidad de que dichos terrenos sean utilizados
para un fin público inmediato, la norma de razonabilidad
establecida por nuestra jurisprudencia le daría base a ella
para denegar cualquiera lotificación de los mismos, *Segarra*
v. *Junta de Planificación*, 71 D.P.R. 150 (Snyder) (1950),
cita precisa a las págs. 153 y 154.    Lo que se propone esta
norma es evitar la especulación del propietario con la nece-
sidad pública, encareciendo el valor de la expropiación o for-
zando al Estado a anticipar sus planes, pero al mismo tiempo,
protegiendo al propietario contra cualesquiera inercia o extra-
vagancia del poder de policía del Estado.    Dar como negativa
indeterminada la simple reserva para uso público no es razón
suficiente para denegar una solicitud de lotificación, máxime
en un caso como éste, en que posiblemente no todos los terre-
nos comprendidos en la solicitud sean necesarios al uso
público.    Lo mas aconsejable en este momento es devolver el
caso para que la Junta determine no sólo la razonabilidad del
tiempo que ha transcurrido desde la declaración de la reserva
para uso público, sin que el Estado haya iniciado el trámite
de la expropiación, sino también cuánto tiempo más durará
el trámite de la expropiación, para que este Tribunal esté en

condiciones de determinar, como cuestión de derecho, si la negativa a que su dueño use de su propiedad, resulta arbitraria, irrazonable o confiscatoria.

■■ En cuanto al extremo que los dos solares carecerían de acometidas y aceras, no sabemos si se trata de una cuestión de cabida o de falta de construcción de dichas facilidades. De tratarse de una falta de cabida habría que hacer un estudio para determinar si la aplicación estricta de los reglamentos de la Junta en tales circunstancias equivale a una expropiación sin debida compensación, o a una confiscación del derecho de la peticionaria. Precisamente para evitar estos problemas constitucionales es que la Ley y los Reglamentos disponen que la Junta podrá conceder variaciones, art. 26 de la Ley de Planificación, Ley núm. 213 de 12 de mayo de 1942, según enmendada, 23 L.P.R.A. secs. 1 y 28, y el art. 9 del Reglamento núm. 4 de 1955, pág. 19; *Otto* v. *Steinhilber*, 24 N.E.2d 851 (1939) (Finch), cita precisa a las págs. 852–853; *Beirn* v. *Morris*, 103 A.2d 361 (1954) (Hetter), cita precisa a las págs. 361–364; Yokely, *Zoning Law and Practice*, Vol. I (2a. ed.) págs. 324–352. De tratarse de una falta de construcción de dichas facilidades, no nos parece justo obligar a la dueña de dichos terrenos a construir por anticipado dichas facilidades sin tener la seguridad que su lotificación será aceptada. La Junta podría condicionar el permiso de lotificación en este sentido o aceptar el afianzamiento que le propuso la peticionaria en su solicitud de reconsideración. Para una determinación final sobre el primer aspecto de la cuestión—falta de cabida—o sobre el segundo aspecto de la cuestión—falta de construcción de facilidades—lo mejor es devolver el caso a la Junta.

■ En cuanto a la posible controversia entre el Estado y la peticionaria sobre algunos terrenos contiguos a la ensenada del Condado, que puedan resultar bienes de dominio público, existiendo como existe un plano oficial de deslinde preparado por el propio Estado, de fecha 22 de mayo de 1951, mejor que una controversia de tipo judicial sobre el título,

el caso queda reducido a un simple cotejo de planos para determinar la porción a ser lotificada. Casualmente lo que alega la peticionaria ante nos es, que descontados tanto la parte que ocupará la Avenida Norte como la parte deslindada de los terrenos contiguos a la laguna, la finca a ser lotificada tiene la suficiente cabida para que su solicitud de lotificación prevalezca. La determinación genérica que hizo la Junta sobre la existencia de dicha controversia, la hizo sin darle a la peticionaria una oportunidad de presentar su prueba sobre este extremo. Esto resulta contrario a la mejor práctica administrativa. Hoy podríamos decir, contrario a las propias Reglas de Procedimiento en Vistas Administrativas adoptadas por la Junta el 15 de mayo de 1957. Véase la regla 16:00 sobre la recepción de la evidencia.

En cuanto a si sus actuaciones en este caso caen dentro de sus poderes discrecionales nos reservamos cualquier juicio sobre el particular hasta que el caso sea visto en sus méritos.

*Deben revocarse las resoluciones hasta ahora dictadas y celebrarse una nueva vista para hacer las determinaciones específicas que anteriormente se detallan.*